AUGUSTA A. MORAN, Appellant, v. FRANKLIN LIFE INSURANCE COMPANY, Respondent.

St. Louis Court of Appeals, November 7, 1911.

1. FRATERNAL BENEFICIARY ASSOCIATIONS: Applicability of Non-forfeiture Law. The non-forfeiture law (Section 5856, Revised Statutes 1889), relating to life insurance, is not applicable to insurance upon the assessment plan.

2. ———: Assessment Policy. A life insurance policy, which provides for the payment of fixed sums at certain intervals and

which authorizes the levying of an assessment on persons holding similar policies, if necessary to pay death claims, is an assessment policy, under section 6950, Revised Statutes 1909, and is not subject to the non-forfeiture law.

3. ———: ———: **Character of Policy, How Determined.** It determining whether a policy of life insurance issued by an insurance order is on the assessment or the old-line plan, the constitution and by-laws of the order, providing for the payment of fixed sums at certain intervals and for the levying of assessments, as well as the policy itself, may be taken into consideration.

4. ———: ———: ———: **By-laws Govern Assessments.** A life insurance policy which provides for payments of fixed sums at stated intervals and which authorizes assessments on persons holding similar contracts, if necessary, notifies the holder that he is amenable to assessments in addition to the regular payments as provided by the by-laws of the insurer, and, though the policy does not in terms make the by-laws a part of the contract, the by-laws govern the levying of the necessary assessments.

5. ———: ———: **Liability for Assessments.** Where an assessment company contemplates only one plan of life insurance, which is embodied in policies issued, and the policies provide for fixed payments at stated intervals, and authorize assessments on persons holding similar contracts, if necessary to make good the impairment of the "emergency fund," the holder of a policy is personally liable for assessments regularly made while his membership continues, and the contract is an assessment contract.

6. **LIFE INSURANCE: Fraternal Beneficiary Associations: Assumption of Liability by Old-Line Company.** For a contract, whereby an old-line life inurance company reinsures the business of an assessment company, to have the effect of transforming the assessment contracts into simple life policies on the level premium plan, it must express a clear intent to that effect.

7. ———: ———: ———: **Ultra Vires.** Where an old-line life insurance company reinsures the business of an assessment company and assumes the outstanding policy contracts and all obligations to policy holders and beneficiaries thereunder, and issues to the policy holders a certificate reciting that it assumes the insurance under the terms and condition of the policies, the contract is not changed from an assessment contract to an old-line policy; and this would be true notwithstanding the old-line company had no power to assume the assessment contract, since it should not be held to have made an entirely different

contract than the one it made merely because it lacked the power to make the contract actually entered into.

8. ——————: ———— ————: **Power to Levy Assessments Thereafter.** Where an old-line life insurance company reinsures the business of an assessment company and assumes the outstanding policy contracts and all obligations to policy holders and beneficiaries thereunder, and issues to the policy holders a certificate reciting that it assumes the insurance under the terms and conditions of the policies, the fact that the old-line company has no authority to levy assessments would not deprive policy holders of their right to have those holding similar contracts contribute by paying assessments on death benefits as they occur, nor deprive the old-line company of its right to receive these assessments, which was promised to it as consideration for its contract of reinsurance, but the assessment company could levy them, or a court of equity could do it or order it done.

9. **LIFE INSURANCE: Pleading: Waiver: Estoppel.** Although evidence of a waiver of a condition in a life insurance policy is admissible under an allegation of performance, yet where a petition, in an action on such a policy, admits that insured discontinued the payment of premiums, but alleges that the policy was in force at the time of his death, under the nonforfeiture law, and does not plead either waiver of, or estoppel to set up, the avoidance of the policy because of the nonpayment of premiums, it is not sufficient to warrant the invocation of either waiver or estoppel.

10. **INSURANCE: Waiver: Pleading: Evidence.** In an action on an insurance policy, evidence of a waiver of a condition is admissible under an allegation of performance.

11. ————: **Waiver: Estoppel: Pleading.** In an action on an insurance policy, in order for the plaintiff to avail himself of an estoppel on the part of the defendant to assert the avoidance of the policy because of the non-performance of some condition, or of a waiver of such breach, it is necessary for him to set up such matters in his pleadings.

12. **LIFE INSURANCE: Proofs of Loss: Waiver: Evidence.** Where the petition, in an action on a life insurance policy, alleged waiver of proofs of death, a letter by insurer, wherein it asserted that the policy lapsed on a designated date because of the failure of insured to pay an assessment due on that date, was admissible to show waiver of proofs of death.

## Appeal from St. Louis Circuit Court.—*Hon. George H. Williams,* Judge.

AFFIRMED.

J. J. O'Donohoe and F. H. Bacon for appellant.

(1) The contract in this case is not one of insurance upon the assessment plan because the payment of the promised idemnity is not in any manner or degree dependent upon the collection of an assessment upon persons holding similar contracts, but is an ordinary whole life policy in which the premium is fixed and level. Hence it is subject to the statute which applies to that form of policies. Folkens v. Ins. Co., 98 Mo. App. 480; Moore v. Ins. Co., 112 Mo. App. 696; Williams v. Ins. Co., 189 Mo. 70; State ex rel. v. Vandiver, 213 Mo. 187. (2) The positive requirements of the statute cannot be waived, and any portion of the contract in violation of the statute even though consented to by the parties is void. Ins. Co. v. Cravens, 178 U. S. 389; affirming Cravens v. Ins. Co., 148 Mo. 583; Life Assn. Co. v. Clements, 140 U. S. 226; Smith v. Ins. Co., 173 Mo. 329. (3) If the contract sued on is a policy of ordinary life insurance, and it was assumed by the Franklin Life Ins. Co., an old-line company, that company took it subject to the laws of the State of Missouri relative to companies doing business on the old-line plan, and therefore subject to sections 7897 and 7899 of the Revised Statutes of 1899. (4) The statute creates an arbitrary standard of valuation, and method of computing the net value, and creates a legal liability without regard to the form of the contract, or the nature of the organitazion. It makes no exceptions, and no company is exempt unless there is by a subsequently enacted statute an express exemption. No such exemption is found in the statutes. Roth v. Ins. Co., 122 Fed. 853. (5) The language of the statute is "no policies of insurance on life hereafter issued by any life insurance company authorized to do business in this state shall be for-

feited," and says that the rule must be enforced "any
thing in the policy to the contrary notwithstanding."
The policy sued on is one of insurance on life issued
by a company authorized to do business in the state,
and assumed by a company authorized to do business
in the state.   Hence the non-forfeiture statute must
apply.   Kern v. Supreme Council, 167 Mo. 471; Logan
v. Fidelity & Casualty Co., 146 Mo. 114; Knight Temp-
lars Co. v. Jarman, 187 U. S. 197; Ins. Co. v. Cravens,
178 U. S. 389; State ex rel. v. Vandiver, 213 Mo. 187;
opinion of Judge Marshall in Westerman v. Supreme
Lodge, etc., 196 Mo. 670.   (6)  The opinion of this
court in the case of Rose v. Ins. Co., 132 S. W. 613,
is opposed to the preceding authorities, and its effect
is to practically abrogate the non-forfeiture statute.
In that case the court was only advised of one side of
the question.   (7)  Even if the non-forfeiture statute
does not apply to the policy sued on, and even if it
had no net value, yet it appears from the agreed state-
ment of facts and the evidence that the policy in ques-
tion was wrongfully declared forfeited for the non-
payment of a so-called special assessment levied by the
Franklin Life Ins. Co., which had no power to levy
any such assessment.   The sole power to levy assess-
ments was given to the Executive Committee of the
Merchants' Life Association.   Agnew v. United Work-
men, 17 Mo. App. 254; Craig v. Ins. Co., 136 Mo. App.
5; Burchard v. Travelers' Assn., 139 Mo. App. 606;
Settle v. Farmers, etc., Assn., 131 S. W. 136.   (8) This
power to levy an assessment did not pass to the Frank-
lin Life Insurance Company because the power to
make an assessment cannot be delegated.   Burchard
v. Travelers' Assn., 139 Mo. App. 606; Garretson v.
Equitable M. L., 93 Iowa 402; Underwood v. Legion of
Honor, 66 Iowa 134; Conductors' Assn. v. Birnbaum,
116 Pa. St. 565; Mutual Aid Soc. v. Helburn, 81 Ky.
1; Hill v. Ins. Co., 28 Grant Ch., Up. Can. 560.   3
Cooley's Briefs on Insurance 2348.   (9)  The Frank-

lin Life Insurance Company was only authorized to do business in Missouri as a regular life insurance company. The policy in question calls for a regular periodical premium. When the Franklin Life assumed the contract it was bound to know that it could not levy any assessments, but was confined to the premiums specified in the policy, which are fixed and level as of the age of entry, and that the non-forfeiture statute would apply. The Franklin Life had no power to assume any other kind of a contract than one for regular life insurance. Smoot v. Bankers' Life Assn., 138 Mo. App. 438. The defendant cannot shield itself behind the doctrine of *ultra vires,* because the contract is executed. Ralph v. Ins. Co., 10 Mo. App. 15; Lysaght v. Co-operative, etc., Assn., 55 Mo. App. 538; Smith v. Richardson, 77 Mo. 422; Chenoweth v. Pacific Express Co., 93 Mo. App. 185. (10) When sued upon a policy the company cannot make any objection that is different from or additional to those which it stated when it refused to pay. In this case the refusal to pay was based upon the sole ground that Moran forfeited his policy by the non-payment of the illegal special assessment claimed to be due December 20, 1901. It must stand or fall upon the defense then asserted, because the plaintiff had the right to suppose that the company would, if sued, rely on that defense. Taylor v. Supreme Lodge (Mich.), 97 N. W. 680; Brink v. Fire Ins. Co., 80 N. Y. 108; Castner v. Ins. Co., 55 Mich. 273; Cahill v. Ins. Co., No. 2289; 5 Biss. 211.

*Jones, Jones, Hocker & Davis* for respondent.

(1) The organic law, the charter, by-laws and policy constitute the contract of insurance. Smoot v. Bankers, 138 Mo. App. 461; Purdy v. Assn., 101 Mo. App. 92; Hayden v. Franklin Life, 136 Fed. 285; 16 Ency. of Law 867; 3 Ency. of Law 1059 et seq.; 3 Ency. of Law 1081 et seq.; 1 Joyce on Sus., sec. 188; Sulz v.

Mut. Res., 145 N. Y. 563; In re Equitable Assn., 131 N. Y. 354; Sup. L. v. Knight, 117 Ind. 489; Haas v. Mut. Relief, 118 Cal. 8; May v. Soc., 13 N. Y. St. 66; Sunival v. Dubuque, 18 Iowa 319; Sup. Com. v. Ainsworth, 71 Ala. 436; Mulles v. Assn., 42 N. J. Eq. 458; Barbat v. Mut. Res., 28 S. E. 498. (2) The contract is an assessment contract and the non-forfeiture law is inapplicable. Hayden v. Franklin Life, 136 Fed. 285; Trisler v. Mut. Res., 128 Mo. App. 497; Hanford v. Assn., 122 Mo. 50; Elliot v. Assn., 163 Mo. 132; Westerman v. K. P., 196 Mo. 717; Haydel v. Mut. Res., 104 Fed. 718; Haydel v. Mut. Res., 98 Fed. 200; Smoot v. Bankers, 138 Mo. App. 461; McCoy v. Ins. Co., 134 Mo. 35; Mut. Res. v. Roth, 122 Fed. 853; R. S. Mo. 6959. The reinsurance contract did not transform the policy contract into an ordinary life old-line contract. Hayden v. Franklin Life, 136 Fed. 285. (3) The policy had no net value. Rose v. Franklin Life, 132 S. W. 613; Ins. Co. v. Statham, 93 U. S. 853; Mut. Res. v. Roth, 122 Fed. 853; Bankers' Life v. Howland, 30 Ins. L. J. 198; People v. Security Life (N. Y.), 34 Am. Rep. 528; Ins. Co. v. Heidel, 8 Lea 495; State v. Sheets (Ohio), 52 L. R. A. 544.

STATEMENT.—This is an action brought by the beneficiary after the death of the insured to recover the amount of an insurance policy issued by the Merchants' Life Association of the United States and assumed by the defendant. The trial court directed a verdict for the defendant at the close of plaintiff's evidence and plaintiff has appealed. The insured was in default as to the payment of premiums at the time of his death, and, according to its terms, the policy was void on that account. But the plaintiff contends that, under the evidence and the provisions of the Missouri non-forfeiture statute, the insurance had been extended so as to be in effect when the insured died. The correctness of the trial court's action in overruling this

contention is the important question for our consideration.

The petition proceeds on the theory that the Merchants' Life Association was an ordinary life insurance company and issued the policy in suit as an ordinary life insurance policy subject to the Missouri non-forfeiture law, and alleges the assumption of the policy by the defendant, Franklin Life Insurance Company, an ordinary life insurance company.  It then proceeds as follows: "Plaintiff states that said Michael A. Moran continued to pay the premiums on said policy until, to-wit: January 15, 1902, when the said Michael A. Moran discontinued the payment of further premiums.  Plaintiff states that at the time of said lapse, to-wit: on the 15th day of January, 1902, more than three full annual premiums had been paid on said policy, and the net value of said policy under the statutes of the state of Missouri in such case made and provided, amounted to the sum of, to-wit: Three hundred dollars, three-fourths of which said sum applied as a net single premium, as provided by said statute, extended the policy for the full amount thereof, for the term of, to-wit: four years.  Plaintiff states that within the said period, to-wit, on the 18th day of April, 1904, said Michael A. Moran died.  Plaintiff states that the said Michael A. Moran in his lifetime had duly complied with all the terms and conditions of the said contract to be done and performed by him, except as hereinbefore stated.  Plaintiff states that the plaintiff is the same person named in said policy as payee thereof.  Plaintiff states that, after the death of said Michael A. Moran and within ninety days after such death, she notified defendant, Franklin Life Insurance Company, of the death of said Michael A. Moran, and requested blank forms upon which to make proofs of death; but said defendant refused to furnish said blank forms, and then and there disclaimed all liability under said policy, whereby defendant waived

the furnishing of proofs of the death of said Michael A. Moran.  Plaintiff states that said defendant disclaimed all liability and refused to pay said policy on the sole ground that the said Missouri statute did not apply to the said contract and said policy had lapsed, and at no time placed its refusal to pay upon the ground that any condition of said policy as to the proofs of death had not been complied with.'' Prayer for judgment follows the foregoing.

The answer, by denials and affirmative allegations, properly raises the defense that the Merchants' Life Association was an assessment company, and that the policy sued upon was one of insurance upon the assessment plan and exempt from the Missouri non-forfeiture laws.  It alleges that all rights under the policy lapsed and became null and void according to its terms because of the failure of the insured after due notice to pay a special assessment due December 20, 1901, and a regular quarterly assessment due January 15, 1902.  It alleges that no annual premiums have been paid on the policy sued on; that said policy has no net value and that the net single premium for temporary insurance for the full amount of said policy from the date of lapse to the date of death was far in excess of the net value of said policy.

Plaintiff's evidence consisted of an agreed statement of facts, and certain additional evidence which we will mention.  It appears from the agreed statement that the Merchants' Life Association was an assessment company organized in 1890 under what is now article 3, chapter 61, of the Revised Statutes of Missouri 1909, ''to carry on a life insurance business on the assessment plan.''  Its charter provided that ''the fund with which to pay death losses, is to be accumulated by assessments on policy holders.''  It also provided for an emergency fund as contemplated by the statute relating to assessment companies.  Its by-laws declared that ''the aim of the association shall

be to furnish safe life indemnity at cost on the plan hereinafter set forth.'' They provided that ''all policy holders and none but policy holders shall be members of the association.'' They empowered an executive committee to levy ''all premiums and assessments'' as stated in said plan, which is as follows:

INSURANCE PLAN. ''The premium call, payable annually (which for convenience may be paid quarterly as stated herein) for the purpose of providing a mortuary fund for the payment of death claims, and emergency reserve fund to meet death claims in excess of the mortuary fund and an expense fund for current expenses, shall be according to the following rates at entry for each $1000 insurance.'' Here follows table of entry rates, both quarterly and annual, increasing annually from ages twenty to sixty. The quarterly rate in this table for the insured in this case at age of entry, forty-four years, was $4.14 per $1000 of insurance, or $20.70 for $5000 of insurance. The table is then followed by this provision: ''Should the emergency reserve fund or any part thereof, be used for the payment of death claims in excess of the mortuary fund, its impairment shall be made good by assessments in addition to the regular premium call, sufficient to pay the maximum amount of insurance stated in the policy.''

The by-laws provide additionally that assessments to meet impairment of the emergency reserve fund should be ''against each member of the association according to the ratios of the mortuary call,'' and prescribe the notice to be given of such special, as well as the regular, assessments, and the manner of serving same. They also provide that ''if any policy holder should fail to pay the amount of his or her premium or assessment on or before the day fixed for the payment thereof, the policy shall lapse, become null and void and of no effect.'' Said agreed statement of

facts further stipulated that on April 15, 1897, while the foregoing charter and by-law provisions were in force, the said Merchants' Life Association issued to Michael A. Moran its certificate of membership or policy, whereby "in consideration of the first annual premium of seventy-nine dollars and seventy-five cents, the written and printed application for this policy, and the payment of all premiums as stated in the insurance plan endorsed hereon, which application and plan are hereby made a part of this contract," the said association promised "to pay to Augusta A. Moran, wife of the insured, . . . five thousand dollars, within thirty days after receipt and approval by it of satisfactory proofs of the death of M. A. Moran, St. Louis, Mo. Provided, that if any premium, called in accordance with said insurance plan, shall not be paid on or before the day named in the notice for the payment thereof, this contract shall be void." The "insurance plan endorsed hereon" was substantially the same as that described in the by-laws and above set forth. The provision for making good impairment of the emergency fund contained in the plan endorsed on the policy was as follows: "Should the emergency reserve fund be used, in excess of statutory requirement, for the payment of death claims, its impairment shall be made good by additional premium calls sufficient to pay the maximum amount of insurance stated in the policy." The said agreed statement of facts further stipulated that Michael A. Moran, made to the Merchants' Life Association all payments demanded of him until May 20, 1899, being nine regular quarterly premiums or assessments of $20.70 each, aggregating $186.30. That on May 20, 1899, the defendant, an old line life insurance company authorized to do business in Missouri, reinsured the business of the Merchants' Life Association by contract approved by the policy holders and the superintendent of insurance

in accordance with what is now section 6953, Revised Statutes 1909. By said contract, so far as it is material, in consideration of the transfer to the defendant of all of the money, securities, assets and properties of every kind of the Merchants' Life Association and of the transfer to the defendant of all of the outstanding policies of the Merchants' Life Association with all premiums due or to become due thereon "and on the complete substitution" (so far as lies in the power of the Merchants' Life Association) of the defendant in place and stead of the Merchants' Life Association, the defendant agreed that it would "assume outstanding policy contracts" . . . "and all obligations to policy holders and beneficiaries thereunder."

The defendant also issued to the insured individually the following:

"Springfield, Ill., June 14, 1899.

"The Franklin Life Insurance Company of Springfield, Ill., hereby assumes under and according to the terms and conditions thereof, policy or certificate No. 3775, issued by the Merchants' Life Association of the United States, April 22, 1897, to Michael A. Moran of St. Louis, Mo., for $5000, payable to Augusta A. Moran.

"T. C. ROSEBERRY,        ALFRED ORENDORF,
    "Secretary.                    President."

Thereafter the insured made all payments demanded of him by the Franklin Life Insurance Company until November, 1901, being ten quarterly installments of $20.70 each on regular premium calls, and five special assessments, the aggregate of the payments made by him after the contract of reinsurance amounting to $224. "That on the 11th day of November the defendant levied a special assessment of $2.20 against said Moran on account of said policy; said special assessment was payable on December 20, 1901, of which special assessment the insured was duly noti-

fied and said assessment was not paid, or tendered by or for the insured." "That on the 15th day of January, 1902, the regular quarterly payment of $20.70 upon said certificate or policy became due, of which the said Moran was duly notified, and which was not paid or tendered by or for said Moran, and he paid nothing on said policy thereafter." "That plaintiff is the beneficiary designated in said policy." "That Michael A. Moran died April 18, 1904."

In addition to the agreed statement of facts the plaintiff introduced a letter which was written under date of October 5, 1905, in response to one written by the plaintiff's attorney making claim under the policy. The letter was as follows:

"In reply to your inquiry, would say that Michael A. Moran was at one time insured under policy number 3775, issued by the Merchants' Life Association. The entire business of that concern was reinsured by this company in 1899, and said policy remained in force until December 20, 1901, when it lapsed and became null and void by reason of Mr. Moran's failure to pay an assessment due on that date."

Plaintiff also offered evidence which she claims tends to prove that the policy had a net value within the meaning of the non-forfeiture laws, but in the view we take of the character of the policy, that evidence related to an immaterial matter.

CAULFIELD, J. (after stating the facts).—I. Plaintiff's case concedes that there was a default in the payment of assessments or premiums, and the policy, by its terms, was void on that account unless the non-forfeiture law of Missouri (Sec. 5856, R. S. 1889) was applicable thereto and operated to extend the insurance from the time of default to the death of the insured. The non-forfeiture law is not applicable if the contract in suit is one of insurance upon the assessment plan. [McCoy v. Bankers' Life Assn., 134 Mo.

App. 35, 114 S. W. 551; Smoot v. Bankers' Life Assn., 138 Mo. App. 438, 120 S. W. 719; Hayden v. Franklin Life Ins. Co., 136 Fed. 285.] The trial court concluded that it was such a contract and therefore sustained a demurrer to the evidence. Whether that conclusion was correct is the question before us. In determining it, we might content ourselves with a reference to the very well-considered opinion in the case of Hayden v. Franklin Life Ins. Co., decided by the United States Circuit Court of Appeals, Eighth Circuit, and reported in 136 Federal Reporter, 285. So far as the question before us is concerned the facts in that case were identical with those in the case at bar and involved the same form of policy, the same constitution and by-laws, the same contract of assumption or reinsurance, and the same insurance companies. The policy was there held to be a contract of insurance upon the assessment plan and the non-forfeiture law inapplicable. Such holding had the unqualified approval of our own Supreme Court in Westerman v. Supreme Lodge K. of P., 196 Mo. 670, 714, 94 S. W. 470. But we will consider the matter briefly in the light of our statutes and decisions.

Sec. 5860 of the Revised Statutes 1889 (now Sec. 6950, R. S. 1909) provides that "every contract whereby a benefit is to accrue to a person or persons named therein, upon the death or physical disability of a person also named therein, the payment of which said benefit is in any manner or degree dependent upon the collection of an assessment upon persons holding similar contracts shall be deemed a contract of insurance upon the assessment plan." There are other provisions in the article of which said section is a part, but we need not set them forth. It is sufficient to say that in all respects the policy in suit conforms to the requirements of said article and section so as to be "a contract of insurance upon the assessment plan" if the payment of the benefit to accrue under it "is *in any*

*manner or degree* dependent upon the collection of an assessment upon persons holding similar contracts."

There has been considerable discussion in the decisions as to the applicability of this language to particular policies. We need not set it forth. It is sufficient for the purposes of this suit that we may deduce from such decisions the conclusion that even though a policy contains provision for fixed and defined sums to be paid at certain intervals, still if such payments do not form the only resource for the payment of the benefit and are not necessarily sufficient for that purpose, but by the terms of the contract shall be supplemented, if necessary, by an assessment which shall be levied by some designated person or body, and be directed against and binding upon persons holding similar contracts, then such policy meets the requirement of the statute under consideration. [Hanford v. Assn., 122 Mo. 50, 26 S. W. 680; Jacobs v. Assn., 146 Mo. 523, 48 S. W. 462; Elliott v. Assn., 163 Mo. 132, 63 S. W. 400; Hayden v. Franklin Life Ins. Co., 136 Fed. 285.] It is not necessary for us to decide that a policy may not be an assessment contract unless it meets every requirement above mentioned; but we do hold that if it does meet all such requirements it is certainly an assessment contract. In determining the character in that respect of the contract before us, we may consider not only the policy but the constitution and by-laws as well, for though the policy does not in terms make the constitution and by-laws part of the contract it does, as we shall see, provide for the making of an assessment. "This of itself was sufficient to advise the policy holder that he was amenable to an assessment in addition to the regular mortuary call, which characterized its policy as being on the 'assessment plan.' As the manner of making such assessments was not pointed out on the face of the policy, and such assessments in their very nature being mutual among the associated members, the law refers the policy

holder to the articles of association and by-laws as incident to such policy contracts." [Hayden v. Franklin Life Ins. Co., 136 Fed. Rep. 285, 290, 291.]

Now in the light of the foregoing, how does the contract in suit meet the necessary requirements? While it is true that it contemplates the payment at certain intervals of a fixed and defined sum and to that extent might be held an old-line policy (Hanford v. Mass. Ben. Assn., 122 Mo. 50, 26 S. W. 680), still such payments do not form the only resource for the payment of the benefit and are not necessarily, and were not in fact, sufficient for that purpose. They were to be applied in certain parts toward the accumulation of a mortuary fund and an emergency fund, and death losses were primarily payable out of the mortuary fund and if that proved insufficient, then out of the emergency fund. The policy expressly provided that "should the emergency reserve fund be used, in excess of statutory requirement, for the payment of death claims, its impairment shall be made good by additional premium calls sufficient to pay the maximum amount of insurance stated in the policy." The by-laws provide that such additional premium calls shall be "against all members of the association according to the ratio of the mortuary call," and empower the "executive committee" to levy the same and prescribe the extent and manner of serving notice thereof.

It seems to us that the contract meets all the requirements of the statute under the decisions. The plaintiff suggests however, that it is necessary that the assessment shall be upon "persons" holding similar contracts, and they must become *personally* liable to pay the assessment when levied. Granting that that is a correct statement of the law, the provision for assessment under this policy is sufficient under it. The provision is that impairment of the emergency fund "shall be made good by assessment in addition to the regular premium call." The by-laws provide that such

assessment shall be against "each member of the association" and that "none but policy holders shall be members." Only one plan of insurance is contemplated by the by-laws and that is the one embodied in the contract in suit. The form of such contract renders the holder personally liable for assessments regularly made while his membership in the association continues. [Ellerbe v. Barney, 119 Mo. 632, 25 S. W. 384.] Thus it appears that it is compulsory on the part of the association to levy the assessment in the event named; that the assessment must be levied on all members, and members must all be holders of policies, and policies must all be of the kind in suit, and the liability of members to meet assessments is fixed. The contract was an assessment contract in all respects.

II. Nor are we impressed by plaintiff's insistence that the contract of assumption transformed the asesssment contract into a simple life policy on the level premium plan. For the contract of assumption to effect such a change, amounting to a complete novation, it must express clear intent to that effect. [Hayden v. Franklin Life Ins. Co., 136 Fed. Rep. 285.] The one before us does not do that. On the contrary it is plain therefrom that all the parties, the Merchants' Life Association, the policy holder, and the defendant, intended that the policy should be assumed as it was, viz.: as an assessment contract. In the contract between the Merchants' Life Association and the defendant, the latter was bound to assume merely the "outstanding policy contracts" and "all obligations to policy holders and beneficiaries thereunder." As part of the consideration therefor the Merchants' Life Association was to transfer to the defendant all its outstanding policies, with all premiums due or to become due thereon, and to completely substitute the defendant in place and stead of the Merchants' Life Associa-

tion, so far as it lay in the latter's power. In the special contract between the defendant and the insured the defendant merely "assumes under and according to the terms and conditions thereof" the policy in suit. All this indicates a clear purpose to assume the contract as it was, as an assessment contract, and nothing else, and betrays no desire or intent to change its character or make a different contract, except that by their conduct, the defendant by levying assessments and the insured by paying them, they assumed that the contract gave the defendant the right to levy assessments. But such a change as this, if it be considered a change, did not change the nature of the contract. It was still an assessment contract though the assessments were to be levied by another than the original authority.

But plaintiff insists that the defendant had no power to levy assessments and therefore the assessment feature would be eliminated from the contract by operation of law. If it be true that defendant lacked the power mentioned it would not affect the contract in the manner indicated. It would not deprive policy holders of their right originally given to them by solemn contract and never surrendered to have others holding similar contracts contribute by paying assessments toward paying death benefits as they accrue; nor should it deprive defendant of the consideration solemnly promised to it in consideration of its entering into the very contract of assumption which plaintiff seeks to enforce. The executive committee of the Merchants' Life Association might make them in order to fulfill its contractual obligations to the policy holders and the defendant, or if that committee would not or could not levy such assessments, a court of equity would have power to levy them, or cause them to be levied. Nor can it avail plaintiff to contend, as it does contend, that defendant had no power to assume an assessment contract, being an old-line com-

pany. We know of no authority for holding that because a corporation lacks power to make the only contract which it intended to make, therefore it should be held to have made an entirely different contract, which, though within its power, it had no intention of entering into. Upon the plainest principles of equity and common honesty, plaintiff should not be permitted, by applying the doctrine of *ultra vires*, to deprive defendant of substantial benefits and conditions of its contract and yet hold it to the letter of its obligation. This is not a case where an insurance company issued or assumed a policy which by operation of law necessarily included the provisions of the non-forfeiture statute; on the contrary, the contract which defendant assumed at the time of such assumption had been fully and properly created as an assessment contract, free from the operation of the non-forfeiture statutes and as such obligatory upon and in favor of the assessment company and its members. We can discover no principle upon which to base a holding that the mere assumption of it by an old-line company completely altered its character and provisions.

III. The letter of October 3, 1905, was written nearly four years after the time the petition conceded that the policy lapsed for the non-payment of premiums, and some eighteen months after the death of the insured. Therein defendant's secretary informed the plaintiff's attorney that the policy "remained in force until December 20, 1901, when it lapsed and became null and void by reason of Mr. Moran's failure to pay an assessment due on that date." Plaintiff asserts that defendant had no right to levy said assessment, it being a special assessment, and therefore the policy could not have been avoided because of it. She contends that having in said letter given the non-payment of said assessment as a reason for the policy having become void, it could not rely in the trial court upon

the non-payment of the subsequent regular premiums as a cause for such avoidance. In response to this contention we are inclined to the opinion that the letter is insufficient either as a waiver of, or as an estoppel to set up, the avoidance of the policy for defaults subsequent to that of December 20, 1901, and we are strongly impressed that the contract of assumption, as acted under by the defendant and the assured, recognized defendant's right to make special assessments, and plaintiff cannot deny that right while suing on the contract conferring it. But it is not necessary for us to pass upon either of those questions for the reason that plaintiff's pleading is not sufficient to let in the contention now made. Plaintiff has not attempted to plead either waiver, estoppel, or performance in the respect under consideration. On the contrary plaintiff admits that payments were made only to January 15, 1902, "when the said Michael A. Moran discontinued the payment of further premiums" and proceeding says, "plaintiff states that at the time of said lapse, to-wit: on the 15th day of January, 1902," etc., etc. Here is a clear admission that the policy had lapsed for non-payment of premiums on January 15, 1902. The only allegation of performance is, "plaintiff states that the said Michael A. Moran in his life time had duly complied with all the terms and conditions of the said contract to be done and performed by him, *except as hereinbefore stated.*" Here is no allegation of performance of the provisions of the policy so far as the payment of premiums subsequent to December 20, 1901 is concerned, but on the contrary an admission that the terms and conditions of the contract in that respect had *not* been complied with or performed by the insured. It is well settled in this state that in a suit on an insurance policy evidence of a waiver of a condition is admitted under an allegation of *performance,* for the reason that "it is merely evidence of a performance," and is "proof of performance" within

the meaning of the conditions of the policy. [Ins. Company v. Kyle, 11 Mo. 278; McCullough v. Ins. Co., 113 Mo. 606, 616, 21 S. W. 207.] And it may be conceded for the purposes of this case that the same rule would apply to evidence of estoppel. But neither the rule nor the reasoning could apply to this case because the petition herein concedes non-performance. This case was brought and tried on the sole theory that there had been default in the payment of premiums and that the policy was void unless saved by the application of the non-forfeiture laws. The letter was admissible for the purpose of proving waiver of the proofs of death, as to which the petition contained proper allegations. We are satisfied that the last was the sole purpose for which it was offered and admitted in evidence. The present contention was clearly an after-thought suggested for the first time in this court. It is overruled.

The judgment of the trial court is affirmed. *Reynolds, P. J.,* and *Nortoni, J.,* concur.