AURELIA M. McPIKE, Respondent, v. SUPREME RULING OF THE FRATERNAL MYSTIC CIRCLE, Appellant.

**St. Louis Court of Appeals, February 2, 1915.**

1. FRATERNAL BENEFICIARY ASSOCIATIONS: Liability as "Old Line Company:" Nonforfeitable Policies. A policy issued by a fraternal beneficiary association, operated on the lodge system, with a ritualistic form of work, which provides a specified amount of insurance at a flat monthly premium, and for nonforfeiture after a specified number of assessments are paid, and for extended insurance, automatically sustained through the accumulation of a reserve for that purpose, is an "old line insurance policy," and will be so treated, regardless of the internal organization of the society.

2. ————: ————: Method of Determination. Whether or not a policy issued by a fraternal beneficiary association is an "old line policy," is to be determined from the terms of the policy, and not from the nature of the association.

3. LIFE INSURANCE: Amount of Insurance: Policy Recitals Govern. Under Sec. 6972, R. S. 1909, the amount payable under a life insurance policy, in the event of death, must appear in the policy, and is not to be ascertained through a search of the by-laws and constitution of insurer.

Appeal from Pike Circuit Court.—*Hon. B. H. Dyer,* Judge.

AFFIRMED.

*R. L. Motley* for appellant.

(1)    The crucial point or question presented on this appeal for determination is, the proper construction to be given the policy or certificate of insurance sued on, and the consequent liability of defendant thereunder by virtue of its certificate of assumption. In settling this question, the application of the insured, the constitution and by-laws of the Safety Fund Insurance Society, which are made a part of the policy, and the policy must be considered together, as each form an essential element of the contract of insurance. Laker v. The Royal Fraternal Union, 95 Mo. App. 353; Richmond v. Supreme Lodge O. of M. P., 100 Mo. App. 19; Pearson v. Knight Templars and Masons Indemnity Co., 114 Mo. App. 283; Lewine v. Supreme Lodge K. of P., 122 Mo. App. 554; Claudy v. Royal League, 168 S. W. 593.    (2) The nature and corporate character of the society issuing the policy sued on is determined by its constitution and by-laws, and an analysis of its constitution and by-laws will enable the court to determine that it is a fraternal beneficiary association, and the business done by it was fraternal beneficiary insurance and not old line or insurance on the assessment plan.    Its constitution provided for a lodge system with ritualistic form of work and a representative form of government, and organized for the benefit of its members and their beneficiaries and not for profit.    Westerman v. Supreme Lodge K. of P., 196 Mo. 670; Claudy v. Royal League, 168 S. W. 594; Tice v. Supreme Lodge K. of P., 123 Mo. App. 85; State ex rel. Supreme Lodge K. of P. v. Vandiver, 213 Mo. 187.

*Hostetter & Haley* for respondent.

(1)    Courts will construe policies of insurance most strongly against the insurer; this rule is rigidly

.applied as to the amount of indemnity to be paid upon the happening of the contingencies insured against, and all doubtful language and ambiguous provisions relating thereto will be resolved against the company and in favor of the insured. Stix v. Travelers Indemnity Co., 175 Mo. App. 171; Birtlenham v. Sovereign Camp Woodmen of the World, 167 S. W. 590; Matthews v. Modern Woodmen, 236 Mo. 326; Renn v. Supreme Lodge K. of P., 83 Mo. App. 442; Connecticut Fire Ins. Co. v. Jeary, 51 L. R. A. 698; Mitchel v. Accident Co., 179 Mo. App. 1; La Force v. Williams Ins. Co., 43 Mo. App. 518, 530; Hoffman v. Accident Indemnity Co., 56 Mo. App. 301; Renshaw v. Mo. State Mut. F. & M. Ins. Co., 103 Mo. 595; Realty Co. v. Insurance Co., 179 Mo. App. 138. (2) A foreign association must prove that at the time its policy in controversy was issued, it was authorized to do business in this State as a fraternal beneficiary society, in order to escape being governed by the provisions relating to regular or old line insurance. Gruwell v. Knights & Ladies of Security, 126 Mo. App. 496; Conner v. Association, 171 Mo. App. 364; Brassfield v. Woodman, 88 Mo. App. 208; Brassfield v. Knights of Maccabees, 92 Mo. App. 102; Huff v. Woodmen, 85 Mo. App. 96; McDermott v. Woodmen, 97 Mo. App. 636; Keeton v. National Union, 178 Mo. App. 301; Lowenstein v. Old Colony Life Ins. Co., 166 S. W. 889. (3) The character of a company and its liability are determined, not by its name, nor by what it pretends to be, but by the policy in question. Toomey v. Knights of Pythias, 147 Mo. 129; Jacobs v. Life Assn., 146 Mo. 523; Folkens v. Ins. Co., 98 Mo. App. 480; Aloe v. Fidelity Mut. Life Assn., 164 Mo. 675; Trenton v. Humel, 134 Mo. App. 595; State ex rel. v. Vandiver, 213 Mo. 187.

NORTONI, J.—This is a suit on a policy of life insurance. Plaintiff recovered and defendant prosecutes the appeal.

A jury was waived and the cause tried before the court. No instructions were asked or given, and the question for consideration relates to the construction of the policy and the character of insurance involved. If the policy is a mutual benefit certificate under our law, then plaintiff is entitled to recover $731.70 only, in accordance with the constitution and by-laws of the company; while, on the other hand, if it is to be treated as an old line life insurance policy, the recovery should be $2000, for such is the amount specified in the face of the policy. The court found the policy to be an old line insurance contract and gave judgment for plaintiff in the amount of $2000 and interest thereon.

Plaintiff's brother, Alexander H. Miller, a number of years ago affiliated with the Home Forum Benefit Order and insured his life in her favor under certificate No. 60259 for a sum not exceeding $2000, on which he paid a monthly assessment of $1.20. After a time, it seems this order became insolvent and the Safety Fund Insurance Society of New York took over its business as through a reinsurance. On April 1, 1901, the insured made his application in writing to the Safety Fund Insurance Society, whereby he surrendered his certificate in the Home Forum Benefit Order and insured in the Safety Fund Insurance Society. From the constitution and by-laws of the latter society in evidence, it appears that it was a New York corporation organized to conduct the business of mutual benefit insurance. Among other things, its constitution and by-laws provide for a representative form of government, a lodge system, and ritualistic work, but the constitution in one place refers to profits as if it was in the purview of the society to accumulate such. However, the main structure of the society portrays its fraternal character, but the certificates or policies issued by it inculcate some features of old line insurance as well. It is with respect to the latter we are concerned here, for it is said that fraternal insurance societies

may not issue nonforfeiture and extended insurance contracts in this State, whatever they may do elsewhere.

The insured, Alexander H. Miller, having accepted a certificate of date April 1, 1901 of the Safety Fund Insurance Society in lieu of that formerly held in the Home Forum Benefit Order, he paid all of the assessments thereon at the rate of $1.20 per month identically as before until the time of his death. But in the interim, the Safety Fund Insurance Society reinsured its business and quit the field—that is to say, on October 20, 1902, the American Guild of Richmond, Virginia, by its certificate in due form issued to and accepted by the insured Miller, assumed the obligation vouchsafed in the Safety Fund Insurance Society certificate held by him. Presently the American Guild of Richmond, Virginia, likewise reinsured its business with this defendant, the Supreme Ruling of the Fraternal Mystic Circle, on May 27, 1907. By this arrangement and under competent contract to that effect, defendant assumed the obligation vouchsafed in the certificate, No. 34304, issued by the Safety Fund Insurance Society on the life of Alexander H. Miller in favor of plaintiff, and such is the contract in judgment.

The first section of the certificate of insurance referred to and that which nominates the amount of the insurance reciting the principal features of the undertaking is as follows:

"SAFETY FUND INSURANCE SOCIETY, SYRACUSE, N. Y. No. 34304.

DOES HEREBY AGREE WITH Alexander H. Miller of Bowling Green in the State of Missouri, hereinafter called the insured, that for and in consideration of the surrender and cancellation of the Certificate of Insurance referred to in the below Sched-

ule A and the other considerations named herein, and the further consideration of the payment of all assessments in accordance with the Constitution and By-Laws, Rules and Regulations of the Society in advance on or before noon of the 10th day of each calendar month in every year during the continuance of this agreement, said Society agrees to pay at its Home Office to Aurelia M. McPike, sister, if living, if not living to the insured's executors, administrators or assigns within ninety days after the receipt and approval of proofs, satisfactory to the Society of the fact and cause of the death of the insured and of a valid claim hereunder, the amount as specifically described and limited hereby of the certificate described in the below Schedule A, issued to the Insured by the Home Forum Benefit Order of Chicago, Illinois, and assumed by this Society under the Contract of Consolidation on the 31st day of October, 1900.

## SCHEDULE A.

| Number given the certificate by the Home Forum Benefit Order. 60259. | Gross Amount of insurance named in Certificate $2000. | Assessment Payable monthly $1.20." |
|---|---|---|

It is to be observed that, while this certificate or policy refers to the constitution and by-laws of the society as though it is a mutual benefit concern, it nominates the amount of the insurance at the sum of $2000 and the assessment payable monthly under the original contract with the Home Forum Benefit Order at $1.20 per month. No other amount whatever is mentioned in the policy as the sum insured than the $2000 above pointed out, save reference is made to the constitution and by-laws of the society for further provision of the contract touching that matter. On analyzing the con-

stitution and by-laws of the Safety Fund Insurance Society, it appears to be quite clear that the insured was entitled under this certificate, considered together with such constitution and by-laws, to insurance in the amount of $731.70 in favor of his beneficiary at his death, in consideration of the payment of $1.20 per month. In other words, by the provisions of the by-laws of the society it was essential for the insured to pay $3.28 a month in order to establish the right of his beneficiary to collect $2000 insurance on his death, but nothing of this kind appears in the certificate.

The certificate or policy involved here is known as a decennial dividend policy, and carries other features than that contemplated in our fraternal society statutes, in that it provides for extended insurance, stipulates for a reserve fund to be established and maintained for the purpose of preventing forfeitures of insurance, and automatically extends the policy through the employment of a certain per cent of the reserve accumulated to its credit after five years upon the default of the insured to pay future assessments. Indeed, the constitution and by-laws of the society authorize the company to issue a contract of this character, and the insurance policy here sued upon contains the following provision with respect of that subject-matter:

## "EXTENDED INSURANCE

"When this policy shall have been continuously in force for five years and default thereafter occurs in the payment of any assessment when due it shall not thereby become forfeited, but shall be continued in force for such a period as sixty per cent of its share of the Reserve Fund as determined by the Society (plus five per cent additional for each year this contract has been in excess of five years until ninety per cent of its reserve Credits shall become so available) will carry it when applied as a single assessment at

the then attained age of the insured according to the Actuaries' Table of Mortality and four per cent interest.''

. This feature of the contract renders the otherwise mutual benefit certificate an old line life insurance policy, according to the rule of decision which obtains in our Supreme Court, for it is said the whole extent of the authority of a fraternal insurance society as to life insurance is to ''make provision for the payment of benefits in case of death,'' and that a society, fraternal in character, is not justified in issuing policies as such that old line companies alone may issue. Therefore, the court declares that if such a society issues a contract of insurance, nonforfeitable after a specified number of assessments are paid, and providing for extended insurance, as here, automatically sustained through the accumulation of a reserve for that purpose, such contract is to be regarded as an old line life insurance policy and treated accordingly, whatever the internal organization of the society may appear to be. [See State ex rel. Sup. Lodge K. P. v. Vandiver, 213 Mo. 187, 111 S. W. 911; see also Toomey v. Sup. Lodge K. P., 147 Mo. 129, 48 S. W. 936.] It is not the nature of the society but the terms of the contract in suit that determines the matter. [See Wilson v. Gen. Assembly of Am. Benev. Assn., 125 Mo. App. 597, 103 S. W. 109, and cases cited.] In this view, the certificate in suit must be regarded as a life insurance policy as if issued on the stipulated premium plan, and, according to the statute, reveal the amount of the sum insured in the policy, for such is the requirement of the statute with respect to policies of life insurance of that character. [See section 6972, R. S. 1909.] The amount promised in the event of death must appear in the policy and not to be ascertained through the search of by-laws and the constitution of the company.

It appears the only amount mentioned and vouchsafed in the policy here is that of $2000 and the judg-

ment should, therefore, be affirmed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.