## HENRY KRIBS, Appellant, v. UNITED ORDER OF FORESTERS, Respondent.

### St. Louis Court of Appeals, June 8, 1915.

1. **WITNESSES: Impeachment: Proof of Indictment Without Conviction Incompetent.** Although under Sec. 6383, R. S. 1909, the fact that a witness has been convicted of a criminal offense may be shown to affect his credibility, it is not competent to show that he has merely been charged with an offense by an indictment, information, or otherwise, for, until conviction, he is presumptively innocent and, prima facie, of good repute.

2. ——: ——: ——. The error in overruling an objection to a question, on cross-examination of the plaintiff in a civil action, as to whether he had been indicted for a felony, was not rendered harmless by his answer, that he had "knocked out" the indictment twice and that the case against him had not been tried, since it did not show that he had been acquitted of the charge.

3. **LIFE INSURANCE: Assessment Plan: Fraternal Beneficiary Associations: Misrepresentations.** Sections 6937 and 6986, R. S. 1909, which provide that no misrepresentation made in obtaining a life insurance policy shall be deemed material or render the policy void, unless the matter misrepresented actually contributes to the death, relate to insurance contracts entered into on the stipulated premium plan only, and the doctrine of warranty, which, prior to the enactment of these statutes, applied to insurance contracts of all kinds, still applies to insurance on the assessment plan, or fraternal in character, and, in either case, the law exacts literal compliance with the warranty, rather than mere substantial compliance, which suffices in the case of representations.

4. ——————: ——————: Misrepresentations: Statements Written by Insurer's Agent. Where an applicant for insurance on the assessment plan signed the application on the representation that the physician of insurer, who examined him, would fill in the blanks, statements subsequently written in the application by the physician could not be treated as a warranty by insured, so as to avoid the insurance, upon such statements proving to be false, unless the application accompanied the policy and insured retained it with knowledge of the false statements.

5. ——————: ——————: ——————: ——————: Instructions. In an action on a life insurance policy on the assessment plan, defended on the ground that insured had made misrepresentations in his application, where there was evidence on behalf of plaintiff that insured signed the application on the representation that the physician of insurer, who examined him, would fill in the blanks, that the physician inserted the answers that were claimed to be false by defendant, and that the application did not accompany the policy and insured had no knowledge of the false statements that were made, an instruction, given for defendant, which instructed a verdict for defendant if insured signed the application and the statements therein made were untrue, was erroneous, for the reason that it ignored plaintiff's evidence concerning the acts of defendant's physician.

6. ——————: ——————: ——————: Rejection of Applicant by "Association." A statement that an applicant for life insurance on the assessment plan had never been rejected by any "physician, company or association" is shown to be false by proof that a fraternal beneficiary association or its physician had rejected the applicant; the word "association" including fraternal beneficiary associations and other organizations of like character.

7. ——————: ——————: Fraternal Beneficiary Associations: Character of Insurance: Method of Determining. Whether a life insurance contract provides for insurance on the assessment plan or evidences a contract which is subject to the laws relating to fraternal beneficiary associations depends, not on the nature of the order issuing the contract, but on the terms and character of the contract, although the order was licensed to conduct business as a fraternal beneficiary association prior to the issuance of the contract.

8. ——————: ——————: ——————: Character of Insurance: Facts Stated. The by-laws of a fraternal insurance order, possessing a representative form of government, a lodge system and ritualistic work, and conducting an insurance business by levying fixed monthly assessments and dues going into a common fund, declared that members taking term certificates should pay monthly for each $1000 benefit the amount shown by a table, and authorized special assessments to pay all claims against

the fund, and provided that the beneficiary of each term member should participate in the fund to the extent of the net amount realized from one assessment on all of its term members, not exceeding the amount named in the benefit certiᶠcate, but if there is sufficient money in the fund, the executive council may, in its discretion, pay the amount named in the certificate. The order, which was admitted to do business in this State as a fraternal beneficiary association, issued a certificate in this State, binding it to pay, at the death of the member, the net amount realized by the order in its term insurance fund from one assessment on all members, not exceeding a specified sum. *Held*, that the insurance was on the assessment plan, under Sec. 6950, R. S. 1909, and that, under Sec. 6952, the beneficiary could recover the face of the policy, instead of the amount of one assessment; section 6962, exempting fraternal beneficiary associations, not being applicable.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin*, Judge.

REVERSED AND REMANDED.

*Joseph A. Wright* and *Conard Paeben* for appellant.

(1)   The court erred in permitting counsel for defendant to interrogate and prove by the plaintiff, over the objection of his counsel, that he had been indicted for arson. An indictment is not evidence of guilt, and such evidence was prejudicial to plaintiff. Sec. 6383, R. S. 1909; State v. Wigger, 196 Mo. 90; State v. Hess, 240 Mo. 160; State v. Weisman, 238 Mo. 557; State v. Phillips, 233 Mo. 306; State v. Leever, 171 Mo. App. 376.   (2)   The answer alleged that William T. Kribs made an untrue statement in his application to the effect that he had never been rejected for insurance when he previously "had made application for insurance to the Modern Woodmen, a fraternal insurance association, and had been rejected by said Modern Woodmen." Rejection by a fraternal order is not rejection for life insurance, and the allegations pleaded constitute no defense. The court

erred in overruling plaintiff's motion to strike out parts of the answer and in admitting evidence of his prior rejection by the Modern Woodmen. Westerman v. Knights of Pythias, 196 Mo. 670; Tice v. Knights of Pythias, 204 Mo. 349; Modern Woodmen of America v. Angle, 127 Mo. App. 94; McDermott v. Modern Woodmen of America, 97 Mo. App. 636; Peterson v. Manhattan Life Ins. Co., 244 Ill. 329, 91 N. E. 466; Penn Mutual Life Ins. Co. v. Bank and Trust Co., 72 Fed. 419; Mutual Life Insurance Co. v. Ford (Tex.), 130 S. W. 769; Wright v. Fraternities Health and Accident Assn., 107 Me. 418, 21 L. R. A. (N. S.) 461; 78 Atl. 475. (3) The questions were propounded by the defendant and it would seem a just and proper rule to adopt that ambiguity should be resolved against the defendant. If it had wished clear and explicit answers, the questions could have been easily and readily framed. Rogers v. Modern Brotherhood of America, 131 Mo. App. 353; Roark v. City Trust and Surety Co., 130 Mo. App. 401; Claver v. Woodmen of the World, 152 Mo. App. 155; Peterson v. Manhattan Life Ins. Co., 244 Ill. 329, 91 N. E. 466; Penn Mutual Ins. Co. v. Merchants Savings Bank & Trust Co., 72 Fed. 419, 38 L. R. A. 33; Mutual Life Ins. Co. v. Ford (Tex.), 130 S. W. 760; Darrow v. Mamily Fund Society, 116 N. Y. 537, 6 L. R. A. 495. (4) The application shows deceased applied for $3000 insurance and the laws of defendant designate the contract one for insurance. Whatever doubts might arise should be resolved in favor of the plaintiff in determining the amount due on the contract. Laker v. Royal Fraternal Union, 95 Mo. App. 353; Hall v. Royal Fraternal Union, 130 Ga. 820, 61 S. E. 917; 1 Cooley's Brief on Insurance, 688. (5) The publication made monthly by defendant in the official order, United Forester, with bold letters announcing a large surplus to protect its contracts, and sent to all the members, is an admission of defendant that it has and

had at all times sufficient funds to pay the term insurance contracts in full. Defendant cannot now limit its liability to $380.60 on a $3,000 contract and thereby profit by its own fraud and wrong. Instruction number 2 offered by defendant instructing the jury that if they found one assessment equaled only $380.60, they should find for defendant was clearly erroneous. The court should have given the second refused instruction asked by plaintiff. Wabash Valley Protective Union v. James, 8 Ind. App. 449, 35 N. E. 919; Laker v. Royal Fraternal Union, 95 Mo. App. 353; Easter v. Brotherhood of American Yeomen, 154 Mo. App. 456; Craig v. Western Life Insurance Co., 136 Mo. App. 5; Hall v. Royal Fraternal Union, 130 Ga. 820, 61 S. E. 919; 4 Cooley's Brief on Insurance, 3283-4; Phillips v. St. Louis & San Francisco R. Co., 211 Mo. 419. (6) Instructions numbers 5, 6 and 7, offered by defendant, are erroneous; rejection by the Modern Woodmen of America was not rejection for life insurance. Cases cited under point 2. (7) Instructions numbers 5, 6 and 7, given for defendant, are erroneous for a further reason. These instructions ignore entirely the evidence that deceased did not read over the application and that Dr. Waterhouse, the examining physician, filled in certain answers after William T. Kribs left his office. Modern Woodmen of America v. Angle, 127 Mo. Apt. 94, 111; Jones v. Prudential Insurance Co., 173 Mo. App. 1; Ormsby v. Laclede Farmers, etc., Ins. Co., 105 Mo. App. 143; Suravitz v. Prudential Insurance Co., 244 Pa. 582, L. R. A. 1915a; Lyon v. United Moderns, 148 Cal. 470, 4 L. R. A. (N. S.) 247; 3 Cooley's Brief on Insurance, 2555-2561; 2 Bacon on Benefit Societies (3 Ed.), sec. 458. (8) Contracts for death benefits are properly classified by the courts of Missouri, having regard to the statutory provisions, as follows: (a) Regular life insurance, (b) insurance on the assessment plan, (c) benefits in fraternal beneficiary societies. State ex rel. v. Van-

diver, 213 Mo. 187; Westerman v. Knights of Pythias, 196 Mo. 670; Aloe v. Fidelity Mutual Life Assn., 164 Mo. 675; Toomey v. Knights of Pythias, 147 Mo. 129; Tice v. Knights of Pythias, 123 Mo. App. 85; Morton v. Royal Tribe of Joseph, 83 Mo. App. 78. (9) The contract existing between defendant and deceased was insurance on the assessment plan, under Art. III, Ch. 61, Secs. 6950-6952, inclusive, R. S. 1909. Whenever a benefit accrues under a contract of insurance, "the payment of which said benefit is in any manner or degree dependent upon the collection of an assessment upon persons holding similar contracts, shall be deemed a contract of insurance upon the assessment plan." Sec. 6950, R. S. 1909; Elliott v. Des Moines Life Ins. Co., 163 Mo. 132; Hanford v. Mass. Benefit Assn., 122 Mo. 50; Moran v. Franklin Life Ins. Co., 160 Mo. App. 407; Easter v. Brotherhood of American Yeomen, 154 Mo. App. 456; Smoot v. Bankers Life Assn., 138 Mo. App. 438; Goodson v. National Masonic Accident Assn., 91 Mo. App. 339; Knott v. Security Mutual Life Ins. Co. (K. C. Court of Appeals), 144 S. W. 178; Hayden v. Franklin Life Ins. Co., 136 Fed. 285; Mutual Reserve Life Ins. Co. v. Roth, 122 Fed. 853; Haydel v. Mutual Reserve Fund Life Assn., 104 Fed. 718. (10) The contract being for insurance on the assessment plan, by Sec. 6952, R. S. 1909, the certificate "shall specify the exact sum of money it promises to pay upon each contingency insured against." Therefore, upon death of William T. Kribs, $3000, became due and payable. McFarland v. U. S. Accident Assn., 124 Mo. 204; Hanford v. Mass. Benefit Assn., 122 Mo. 50; Elliott v. Des Moines Life Ins. Co., 163 Mo. 132; Matthews v. Modern Woodmen of America, 236; Mo. 326, 351; Easter v. Brotherhood of American Yeomen, 154 Mo. App. 456; Goodson v. National Masonic Accident Assn., 91 Mo. App. 339; Courtney v. Fidelity Mutual

191M.A.34

Aid Assn., 120 Mo. App. 110; Kroge v. Modern Brotherhood, 126 Mo. App. 693.

*Douglas W. Robert* for respondent.

(1) (a) The defendant is a fraternal organization conducting its business on the lodge system, with representative form of government, with ritualistic form of work, and limiting its certificate holders to its own members, and provides for the relief of its members' families, widows, orphans and kindred dependents from the proceeds of assessments upon its members. Hence the statutes relating to assessment companies do not apply to it. R. S. 1909, secs. 6962, 7109-7121. (b) The undisputed evidence shows that it is "organized and carried on for the sole benefit of its members and not for profit;" that it has "a lodge system, with ritualistic form of work and representative form of government;" that it provides that "death benefits shall be to the families, heirs, blood relatives, affianced husband or wife, or to persons dependent upon the member." R. S. 1909, sec. 7109. (2) (a) The agreement making the answers warranties is valid. If the answers are false, it is a good defense, for the warranty must be literally true. McDermott v. Woodmen, 97 Mo. App. 636; Aloe v. Insurance Co., 164 Mo. 675; Aloe v. Insurance Co., 147 Mo. 571; Whitmore v. K. & L. of H., 100 Mo. 36. (b) Deceased's answer in the application to the defendant that his mother died in confinement was false. Deceased's answer that he did not have consumption was false. Deceased's answer that he had never been rejected for insurance by a physician or association was false. (c) There was no conflict in the evidence. Anyway, that was for the jury, and plaintiff is attempting to change his theory here. Authorities under point 7. (3) (a) Kribs had applied for "insurance;" an examining physician had declined to recommend him

for "insurance," and he had been rejected for "insurance" by an "association," all of the Modern Woodmen. Deceased's application to the Modern Woodmen was for "insurance." Benefit certificates in fraternal orders are "insurance." Lewine v. Knights of Pythias, 142 Mo. App. 547. (b) There was no ambiguity in the application. The questions were plain, straightforward and simple. The applicant was asked if he had ever been rejected "by any physician, company or association." Peterson v. Insurance Co., 244 Ill. 329; Alden v. Maccabees, 178 N. Y. 535; Bruce v. Insurance Co., 74 Minn. 310. (4) As the plaintiff filed a reply to the answer after his motion to strike out was overruled, he waived any right to complain of such action of the court. Kansas City v. Youman, 213 Mo. 176; Kansas City v. Surety Co., 196 Mo. 300; Springfield Co. v. Donovan, 147 Mo. 628; Anderson v. Railroad, 129 Mo. App. 384; Durham v. City of Bolivar, 106 Mo. App. 384. (5) (a) There was a total failure of proof. Plaintiff sued upon contracts by which, he alleged, the defendant "agreed that upon the death of said William Kribs, * * * to pay the said beneficiaries the sum of one thousand dollars." The contracts offered in evidence contained no such provision. In them defendant agreed to pay, under certain conditions, "the net amount realized by said order in its term insurance fund from one assessment" upon like members, "but not exceeding the sum of one thousand dollars." And the evidence showed but $380.60 was realized from one assessment. A party cannot sue upon one contract and recover upon another. Burke v. Pence, 206 Mo. 335; Ingerson v. Railroad, 205 Mo. 337; Timber Co. v. Railroad, 180 Mo. 420-466; Reed v. Bott, 100 Mo. 62; Myers v. Railroad, 120 Mo. App. 288; Goodwin v. Fritsch, 115 Mo. App. 382; Edelen v. Strong, 34 Mo. App. 295; R. S. 1909, sec. 2021. (b) The application, the certificate and the by-laws formed the contract. Richmond v. Supreme Lodge, 100 Mo.

App. 19; Laker v. Royal Union, 95 Mo. App. 353; Slater v. K. & L. H., 76 Mo. App. 387; Sheele v. Lodge, 63 Mo. App. 277; State ex rel v. Benev. Soc., 42 Mo. App. 488. (6) The statutes relating to assessment companies, Secs. 6950 to 6961, R. S. 1909, do not apply to fraternal companies. They are exempted in express language. Sec. 6962, R. S. 1909. (7) The case was tried below on the theory that defendant was a fraternal beneficiary association, and plaintiff offered instructions on that theory. He cannot change his theory on appeal. Meyer Bros. Drug Co. v. Bybee, 179 Mo. 379; Swearinger v. Ins. Co., 66 Mo. App. 93; Birge v. Bock, 44 Mo. App. 80; Novelty Mfg. Co. v. Pratt, 21 Mo. App. 173. (8) There was no fraud in the publication of the summary of all funds in its hands. Plaintiff's own evidence shows that the same publication contained the exact amount of the term insurance fund. Nor is there any showing that the deceased ever saw this paper or was influenced thereby. No fraud of any kind is charged in the petition. (9) There was no error in the court's requiring the defendant to answer the question, "Are you the same Henry J. Kribs under indictment for arson in this city?" The question was asked for the sole purpose of identification. There was no reason given for the objection made by plaintiff's counsel. Plaintiff's counsel went fully into the matter in redirect examination, and plaintiff explained that he had "knocked out" the indictment twice, "it was thrown out of court," and that he was never tried. The error, if any, was therefore harmless. State v. Howard, 102 Mo. 142-148; Travis v. Insurance Co., 47 Mo. App. 482-486.

NORTONI, J.—This is a suit on three separate certificates of life insurance. The finding and judgment were for defendant and plaintiff prosecutes the appeal.

It appears that the insured, William T. Kribs, applied to defendant for insurance on his life in the amount of $3000, and subsequently affiliated with the order on or about the first day of November, 1908. At that time defendant issued to the insured three several term benefit certificates, Nos. 41, 41A and 41B. Henry J. Kribs and Lizzie Gibson, uncle and aunt of insured, are designated as the beneficiaries. His application for the insurance was approved, and on the first day of November, 1908, defendant issued to the insured the three certificates of insurance sued upon. Each certificate is in words and figures alike, save one is denominated as No. 41, while the second is No. 41A, and the third No. 41B. In each and all of the certificates defendant agrees to pay to the beneficiaries therein named—that is, Henry Kribs, and Lizzie Gibson—on the death of the insured, "the net amount realized by said order in its term insurance fund from one assessment upon all its members holding limited term benefit certificates on its natural premium plan, but not exceeding the sum of one thousand dollars, less such sums, if any, as may have been paid to such member on account of disability benefits." The insured paid all of the assessments accruing on account of the insurance until the date of his death, which occurred on February 18, 1910. But defendant declined to pay more than $380—that is, the amount of one assessment, as a total under the three certificates—, and thereupon Lizzie Gibson assigned her interest under the certificates to her brother, Henry J. Kribs, the plaintiff, and this suit was instituted by him.

The petition proceeds in three counts, one declaring upon each separate certificate of insurance, and avers that such certificates are contracts of life insurance issued by defendant, whereby it was bound to pay plaintiff the full sum of $1000 on each.

By its answer, defendant asserts it is a fraternal beneficiary association; also that, in no event, is plaintiff entitled to recover more than the amount of one assessment on all of the members holding similar contracts of term insurance, which, it is said, is but $380; and, moreover, that the several certificates are void because of certain false statements made by the insured on procuring their issue, which said statements were parcel of the consideration and especially agreed between the parties to be warranties of fact. All of these matters are expressly denied in the reply.

There is a question made in the case as to the character of insurance stipulated in the certificates sued upon, for plaintiff asserts that, though defendant may be a fraternal order, the insurance here involved is insurance on the assessment plan, and, under the statute, it is required to pay the specified sum mentioned in the policy—that is $1000 on each certificate; whereas defendant insists the contracts are merely fraternal beneficiary certificates and the amount to be paid thereunder is limited by competent provisions. However, as the defense of breach of warranty is available in a suit on either a policy issued on the assessment plan or a fraternal beneficiary certificate, the question concerning the character of the insurance contract will be postponed for consideration in the opinion, until other matters pressed upon us are treated with.

The first argument advanced for a reversal of the judgment relates to the propriety of a question propounded and answer elicted from the plaintiff by defendant in the cross-examination. On opening its cross-examination of plaintiff, defendant's counsel propounded the following question to him: "Q. Are you the same Henry J. Kribs under indictment for arson in this city?" To this question plaintiff objected, because an indictment is not evidence of guilt, but this the court overruled, and exception was duly saved.

Thereupon plaintiff answered that he was the same Henry J. Kribs under indictment, and subsequently explained that he had "knocked it out twice," but the case had not been tried.  It is clear the court erred in permitting this question and answer in the circumstances stated, and the fact that plaintiff had succeeded in "knocking out" the indictment twice in nowise relieves the situation, for it does not appear that he had been acquitted of the charge.  Although by our statute (section 6383, R. S. 1909) the conviction of a person who offers himself as a witness may be shown in evidence to affect his credibility, it is not competent to show that he has merely been charged with an offense as by indictment, information or otherwise, for, until conviction, he enjoys the presumption of innocence and of good repute, prima facie, as others do.  The Supreme Court has expressly so ruled the question in judgment here, as will appear by reference to State v. Wigger, 196 Mo. 90, 98, 100, 93 S. W. 390, and it is unnecessary to enlarge upon it.

The application for the insurance and the certificates issued thereon recite that the answers to the questions given in such application are in all respects true and stipulate warranties to that effect, so as to render the insurance contracts void in event the facts are not in all respects wholly true as stated.  Touching this matter our statute, to the effect that such statements shall be regarded merely as representations, and abrogating the doctrine of warranty, unless it appear the fact misrepresented is material to the risk, in that it pertained to a matter which subsequently contributed to the death of the insured, is beside the case, for the rule there prescribed, perforce of other statutes, relates alone to insurance contracts entered into on the stipulated premium plan.  In other words, if the contracts in judgment here are of insurance on the assessment plan, the doctrine of warranty in insurance law which obtained prior to the statute may be

invoked to avoid the insurance, in event the statements of facts which induced it are found to be untrue and the warranty thereby breached. [Aloe v. Mut. Reserve Ass'n, 147 Mo. 561, 49 S. W. 553; Aloe v. Fidelity Mut. Life Ass'n, 164 Mo. 675, 55 S. W. 993.] The same is true, too, with respect to contracts of insurance which are fraternal in character, and, in either case, the law exacts literal compliance with the warranty, rather than mere substantial compliance, which will suffice in the case of representations. [See McDermott v. Modern Woodmen, 97 Mo. App. 636, 71 S. W. 833.]

However, it appears here that the insured died from consumption, and the statements of fact contained in the application touching his own condition of health at the time are such as to render them material, even under the statute. But this is beside the instant case. In the application for the insurance involved here the following questions and answers appear over the signature of the insured:

"Have you ever had any of the following diseases or ailments? 28. Consumption? No. 52. I have had no disease or ailment, except as above or hereafter stated . . . 65. Have you ever applied for life insurance? No. 66. No examining physician has ever declined to recommend me for life insurance, except . . . . 67. I have never been rejected for insurance by any physician, company or association, nor suspended or expelled by your Order, except . . ."

The application then recites:

"79. The following is a true statement of the age, if living, condition of health, age at death, cause of death, how long sick and previous health of my father, mother, brothers, sisters and grandparents, to-wit: Mother—Age at death, 36; cause of death, in confinement; previous health, good. 80. None of my grandparents, uncles, aunts or near relations have been afflicted with consumption"—all of which statements are warranted to be true.

There is evidence in the record tending to prove that insured was afflicted with consumption for several months before he executed the application above mentioned and that he had been advised by a physician to remove to Arizona on that account. There is evidence, also, that the statement as to the death of his mother—the cause being given as in confinement—was untrue and that she died of consumption about 1890. It appears, too, that insured applied for life insurance a short time before to the Modern Woodmen of America, a fraternal beneficiary society, and that he stated in such application that his mother had died of consumption. This application was introduced in evidence, and, likewise, the evidence of several physicians connected with the Modern Woodmen was given to the effect that his application for insurance and membership in that association was rejected because of the statement pertaining to the death of his mother.

But there is evidence, too, on the part of plaintiff, Henry Kribs, uncle of the insured, who was present at the time the application for insurance to this defendant was made, that the insured did not answer the questions above referred to. The evidence of this witness goes to the effect that defendant's medical examiner, Dr. Waterhouse, examined the insured carefully and asked him a number of questions, but, upon coming to these questions, the doctor referred to them as a lot of "tomfoolishness," and said he would later fill in the answers to them. So saying, he directed the insured to sign the application with such questions unanswered, which was done. Dr. Waterhouse testifies that each and all of the questions in the application were propounded to the insured personally and that the answer was written by him therein precisely as given by the insured.

In submitting the matter of breach of warranty to the jury on the part of defendant, the court apparently did not reckon with the evidence of plaintiff,

who, it is said, was present when the application was signed, and testified that the insured made no statements whatever touching the matters above referred to. Defendant's instructions go to the effect that if the jury believed the insured signed the application, then he warranted the statements therein to be true, and that, if they believed the assured was afflicted at the time with consumption, or that his mother had theretofore died of consumption, or any other disease than because of confinement, or that the insured had applied for life insurance and been rejected by any other association, the verdict should be for defendant. These instructions are erroneous, in that they authorize a verdict for defendant on the mere fact of the insured signing the application, whether he acceded to the statements therein contained or not. In other words, the instructions on the part of defendant omit entirely to reckon with the evidence of the insured's uncle, plaintiff, who accompanied him at the time the application was filled out and signed, for this witness said that the insured was not even required by Dr. Waterhouse, defendant's physician, who acted for it thereabout, to make any statements concerning these matters. As to these, plaintiff testifies Dr. Waterhouse said it related to a lot of "tomfoolishness," which he would fill in subsequently, without reading them to the insured, and that insured, therefore, did not read them himself. If such be true, then, though the statements or answers subsequently written by Dr. Waterhouse, or by some one other than the insured, over the signature of the insured, appear to be untrue in point of fact, their untruthfulness may not be regarded or utilized as a breach of warranty so as to avoid the insurance on that account.

While the insured is held to account for such statements and warranties as he makes, this is not true when it appears the statements were not laid before him, so as to obtain his assent thereto, or that the

answers were written by defendant's physician, while acting for it. In such circumstances, the insurer is estopped by the act of its physician to assert that insured consented thereto by merely signing the application at the instance of the physician, leaving such blanks to be subsequently filled. [See Modern Woodmen v. Angle, 127 Mo. App. 94, 104 S. W. 297; Ormsby v. Laclede Farmers' Mut. etc. Ins. Co., 105 Mo. App. 143, 79 S. W. 733. See, also, 3, Cooley's Briefs on Insurance, 2561.] The same doctrine obtains as to insurance agents. [See 3 Cooley's Briefs on Insurance, 2555, 2556.] The exception to this rule is in those cases where the application accompanies the policy and it appears the insured retained it with full knowledge of the false answers therein contained. In the instant case, the application was retained by the company and neither it nor a copy was annexed to the certificates of insurance, and there is nothing to suggest that the insured knew of any false statements in the application, provided they were made by Dr. Waterhouse after he signed it, as plaintiff's testimony tends to show.

Defendant's instructions were erroneous because they authorized a verdict for defendant on the mere signing of the application by the insured, without regard as to whether he or Dr. Waterhouse was responsible for the false statements of fact contained therein.

It is argued the court erred in receiving in evidence the application made by the insured to the Modern Woodmen of America, a fraternal order or association, a short time before, as evidence tending to prove that he had made a false statement to defendant in the application here, to the effect that he had never been rejected for insurance by any physician, company or association. But we are not so persuaded. The application made to defendant and before us here recites:

"67. I have never been rejected for insurance by any physician, company or association, nor suspended or expelled by your Order, except . . ."

The argument is, that an application addressed to a fraternal society, such as the Modern Woodmen, for a certificate of insurance on life therein, is in no sense an application for life insurance and, therefore, the court erred in receiving the one theretofore made to that order and on which the insured was rejected as not a desirable insurable risk. It is unnecessary to consider this matter in the instant case further than to say that the warranty of fact before us goes to the effect that the insured "had never been rejected for life insurance by any physician, company or association." It is entirely clear that if it be found as a fact that he was rejected by the physicians of the Modern Woodmen of America, on application to that order for insurance on his life, such would reveal a breach of the warranty set forth, if we are to give effect as we must, to plain English words.

It is certain that the case of Peterson v. Manhattan Life Ins. Co., 244 Ill. 329, 91 N. E. 466, relied upon touching this matter is not in point, for there the breach of warranty asserted was that the insured stated in his application he had never been declined by any other insurance "company," whereas it appears he had been so declined as a desirable insurable risk by the Modern Woodmen, a fraternal society. It was said that, under the strict construction which obtains in the law of warranty under insurance contracts, a fraternal society does not fall within the meaning of the word insurance "company." However, even that case recognizes the distinction well established, where it appears the insured has answered that he has not been declined by any company or "association."

Here the covenant is, that the insured had never been rejected for insurance by any physician, company

or association. Whatever the doctrine may be else-
where, this court has on several occasions heretofore
declared that such contracts as those involved here are
essentially contracts of insurance on the life involved.
[See Lewine v. Knights of Pythias, 122 Mo. App. 547,
99 S. W. 821; Morton v. Sup. Council, etc., 100 Mo.
App. 76, 90, 73 S. W. 259.] Therefore, if it appear
to the satisfaction of the jury that the insured had
been rejected for insurance by the physicians of the
Modern Woodmen of America or by that association,
this showing will suffice as a breach of warranty on the
facts before us. Indeed, in matters of this character
the courts declare that the word "association" em-
ployed in the application for insurance is sufficiently
comprehensive to include fraternal benefit societies and
other organizations of like character. [See Alden v.
Maccabees, 178 N. Y. 535; Bruce v. Ins. Co., 74 Minn.
310.] And the case of Peterson v. Manhattan Life
Ins. Co., supra, expressly recognizes such to be true.

It is insisted on the part of plaintiff that the con-
tracts of insurance involved here vouchsafe insurance
on the assessment plan, so as to entitle him to recover,
if at all, the full amount mentioned in the certificates,
while defendant urges that the certificates are frater-
nal in character. It is to be conceded that defendant
is a fraternal organization and organized as such under
the laws of Wisconsin. Its constitution and by-laws
reveal the general structure of the society to be one
possessing a representative form of government, a
lodge system and ritualistic work, conducting an insur-
ance business by levying fixed monthly assessments,
and dues on members, which amounts go into a common
fund. But it possesses also another feature distinct
from this, which will be subsequently adverted to. It
appears, too, that it was admitted to do business in this
State as a fraternal society under our statute, on Jan-
uary 6, 1902. The three certificates in suit here were
issued several years after that date—that is, Novem-

ber 1, 1908. But though such be true, the question made is not to be determined by the construction and purport as to the internal organization of the order, but rather by reference to the particular contracts of insurance involved, for, though an order may be fraternal in character, it sometimes occurs that another field is invaded by the form and effect of the contract of insurance issued. It is therefore said that it is not the nature of the order but rather the terms and character of the contract that determine the matter. [State ex rel. Sup. Lodge K. of P. v. Vandiver, 213 Mo. 187, 111 S. W. 911; 15 Am. & Eng. Ann. Cas, 283; Toomey v. Sup. Lodge K. of P., 147 Mo. 129, 48 S. W. 936; McPike v. Supreme Ruling, etc., 187 Mo. App. 679, 173 S. W. 71; Wilson v. Gen. Assembly, etc., 125 Mo. App. 597, 103 S. W. 109.] And this is true, too, though it appears defendant was licensed to conduct the business of fraternal insurance in this State prior to the issue of the contracts in suit. [See Herzberg v. Mod. Brotherhood, 110 Mo. App. 328, 85 S. W. 986.]

In considering this question, it will be necessary to set forth so much of one of the certificates in suit as is material, and it will speak for all, as each of the others are identical, save only the serial number. We copy, too, relevant portions of the by-laws pertaining to the character of the insurance contemplated under these certificates, for the by-laws are aptly referred to as part of the contracts throughout the certificates. However, it should first be said that it appears defendant, though conducting a fraternal insurance business on the whole life plan, erected within the order a special feature known as limited term insurance on its natural premium plan, and the certificates here involved are of the latter class. The by-laws authorize such certificates and provide a scheme with respect to them and their payment independent of the whole life fraternal insurance offered by the order. So much

of certificate No. 41 as is relevant here, issued as a limited term certificate of insurance, on the natural premium plan, is as follows:

"No. 41          Benefit Certificate          $1000
United
Order of Foresters.
(Seal)

"This certifies that William T. Kribs, of St. Louis, Mo., has been admitted by the United Order of Foresters (a fraternal benefit order, organized and existing as a corporation under the laws of the State of Wisconsin) as an insured member thereof, on its natural premium plan, and is entitled to such rights and benefits, and is subject to such obligations and forfeitures, as are or may be in such case provided from time to time in the laws, rules and regulations of said Order, and among such benefits, said Order *will pay,* at the death of said member while in good standing, to Henry Kribs two-thirds and Lizzie Gibson 1-3, bearing relationship to said member of uncle and aunt, *the net amount realized by said Order in its term insurance fund from one assessment upon all its members holding limited term benefit certificates on its natural premium plan,* but not exceeding the sum of one thousand dollars less such sums, if any, as may have been paid to such member on account of disability benefits upon receipt of such proof of death as the executive council may require with the surrender of this certificate."

We have italicized some of the words of the certificate with a view of inviting special attention thereto. The sections of the by-laws of the order which are relevant for immediate consideration in this connection are to be found in law 8 of the order.

"Sec. 4. Natural Premium Rates.—Members taking term certificates shall pay monthly for each one thousand dollars benefit according to their attained

ages, occupations and amount of insurance, the amounts shown in the following table:

## MONTHLY RATE FOR $1000 BENEFIT NATURAL PREMIUM PLAN.

| Age | Ordinary Occupations. | Hazardous Occupations. | Specially Hazardous Occupations. |
|---|---|---|---|
| 18 to 25 | $ .67 | $ .77 | $ .87 |
| 25 to 30 | .71 | .81 | .91 |
| 30 to 35 | .73 | .83 | .93 |
| 35 to 40 | .79 | .89 | .99 |
| 40 to 45 | .90 | 1.00 | 1.10 |
| 45 to 50 | 1.07 | 1.17 | 1.27 |

"Provided, that in case the mortality experience of the Order shall be less than that shown by the National Fraternal Congress Table of Mortality, then the executive council shall have authority to remit a monthly payment in whole or in part, from time to time, so as to make the payments in this plan to conform to the actual mortality experience of the Order."

"Section 8. Special Term Assessments.—Whenever in the opinion of the executive council the amount of money in the term insurance fund is not sufficient to promptly pay all claims against said fund, said council shall levy one or more assessments against each member holding a term benefit certificate according to the rate provided for such members in the laws of the Order. All special assessments made on the term members shall become due and payable on the first day of the calendar month next following the month in which the notice of such assessment shall have been published."

"Section 10.—The beneficiary of each term member shall be entitled to participate in the term insurance fund of the Order to the extent of the net amount

realized by the Order from one assessment upon all of its term, members, but not exceeding the amount named in the benefit certificate of such member; provided, that if there be sufficient money in the term insurance fund for that purpose, then the executive council may in its discretion pay the full amount named in the certificate.''

It appears to be clear enough that the contract of insurance set forth in the certificates, the payment of which is authorized and provided for by these by-laws, is one on the assessment plan under our statute. The statute (section 7901, R. S. 1899) was in force when these certificates were issued and long prior thereto and ever since that time. [See same statute, section 6950, R. S. 1909.] By this statute it is declared that every contract whereby a benefit is to accrue to a person or persons named therein upon the death of a person also named therein, the payment of which said benefit is in any manner or degree dependent upon the collection of an assessment upon persons holding similar contracts, shall be deemed a contract of insurance upon the 'assessment plan, and each contract shall be subject to the provisions of the succeeding sections touching such insurance. It is said the controlling principle of the statute is, that the benefit is to be paid out of a fund raised by assessment upon other persons holding similar contracts, by which they are made liable for the payment of such assessments. Assessment insurance is to be distinguished by reference to the right on the part of the insured to require others holding similar contracts to pay an assessment levied against them to compensate a benefit accrued to him or his beneficiary thereunder, and by reference, too, to the power which is reserved or resides in the insurer to levy assessments upon and require the payments from persons holding similar contracts to pay such benefits as may accrue under

191M.A.35

the terms of like contracts held by others. This being true, it is, therefore, true as well that if the payment of the benefit vouchsafed depends in any manner or degree under a contract assuring the right and power above mentioned, the insurance is on the assessment plan, because of the express terms of our statute. [See Jacobs v. Life Ass'n, 146 Mo. 523, 48 S. W. 462; Williams v. Ins. Co., 189 Mo. 70, 87 S. W. 499; Hanford v. Massachusetts, etc. Ass'n, 122 Mo. 50, 26 S. W. 680; Moran v. Franklin Life Ins. Co., 160 Mo. App. 407, 140 S. W. 955; Elliott v. Des Moines Life Ass'n, 163 Mo. 132, 63 S. W. 400; Smoot v. Bankers' Life Ass'n, 138 Mo. App. 438, 120 S. W. 719.]

Here, the certificate of insurance on its face reveals a contract of life insurance on the assessment plan, for it recites that the order will pay "the net amount realized by said Order in its term insurance fund from one assessment upon all its members holding limited term benefit certificates on its natural, premium plan, but not exceeding the same of $1000." This provision obviously assures to those entitled to the benefit a right to have an assessment made with a view of compensating such benefit, and this assessment is to be made against members holding similar contracts. Such being true, the correlative duty obtains on the part of the defendant to make the assessment accordingly against the holder of every similar contract, with a view of compensating the benefit accrued under these. But the face of the certificates are modified as to this by section 4 of the Law 8, which fixes the amount to be assessed at a certain prescribed amount monthly, and if this were all, it may be the insurance would be other than assessment in character. But when the by-laws above set out are considered together, all of which are parcel of the contract of insurance, it appears defendant expressly reserved the power to make assesments over and above the fixed monthly stipend, and in certain contingencies the in-

sured could insist on this too. It is true section number 4 authorizes the executive council of the order to remit a monthly assessment in whole or in part, if it should appear, according to the mortality experience therein contemplated, that it was not required in certain contingencies. It is true, too, that section number 10, in keeping with the language of the certificate, says that each term member shall be entitled to participate in the term insurance fund of the order, to the extent of the net amount realized by the order from one assessment upon all of its term members, not exceeding the amount named in the certificate. But this is modified by a proviso, to the effect that if there be sufficient money in the term insurance fund for that purpose, the executive council may, in its discretion, pay the full amount named in the certificate. Then, too, section 8 authorizes the executive council, whenever in its opinion the amount of money in the term insurance fund is not sufficient to promptly pay all claims against that fund, to levy one or more assessments against each member holding a term benefit certificate, according to the rate provided for such members in the laws of the order. This reveals a reservation of power on the part of the defendant to make one or more assessments against each member holding similar certificates, when necessary to provide means to meet the demands on benefits then accrued.

When it is remembered that, under the provisions of section 4, the insured is required to pay monthly, say, in this case, as the member was only twenty-four years of age at the time of negotiating the insurance, an assessment of sixty-seven cents on each $1000 certificate and $2.01 on the three certificates per month, the provision of sections 8 and 10, considered together, would render him and every other holder of similar contracts liable to an aditional assessment, whenever, in the opinion of the executive council, such was necessary, as therein recited.

This additional assessment, so provided for, which casts the duty upon the insured and others to pay and confers power on the order to levy it, obviously renders the contracts those of assessment insurance in the view of the Supreme Court declared in Hanford v. Ins. Co., 122 Mo. 50, 26 S. W. 680, even though the monthly payment of sixty-seven cents per $1000 or $2.01 on the $3000 should be regarded as a fixed premium to that extent. [Hayden v. Franklin Life Ins. Co., 136 Fed. 285.] In this respect the instant case is to be distinguished from those of Williams v. Ins. Co., 189 Mo. 70, 87 S. W. 499 and Aloe v. Ins. Co., 164 Mo. 675, 55 S. W. 993, for, in each of those cases, it is said that, though a power was reserved to raise additional funds—in the one to supply the equation fund, and in the other a mortuary fund—in neither did the amount defendant contracted to pay depend in whole or in part upon the collection of the assessment. The contracts there involved stipulated the payment of a certain sum in event of the death of the insured. Here, the amount to be paid depends, under the terms of the by-laws and the certificates, in a manner or degree upon such additional assessment, for if, in exercising its discretion, the executive council depletes the mortuary fund and other benefits mature in the meantime, such council is not only given express power, but by-law, section 8, requires that said council shall levy one or more additional assessments against each member holding a term benefit certificate, according to the rate provided for such member in the laws, to compensate such benefit so accrued in the interim.

Thus it is that the amount to be paid on these certificates held by the insured, after treating the monthly payments as stipulated premium, depend, in a manner or degree, when the discretion of the executive council is considered, on assessments made on other persons holding similar contracts. Obviously, under sections 8 and 10 of by-law 8, when considered

together, the monthly payments provided for in section 4 are not unalterably fixed, for they may be varied on the exercise of the discretion of the executive council.

The rule is well established that insurance is to be regarded as on the assessment plan when the payments are not unalterably fixed by the contract, other elements under our statute above pointed out appearing. When such elements are present and the payments to be made are stipulated in a manner, so as to destroy their character as unalterable and certain, and to introduce the element of uncertainty by variation, as by levying other and additional assessments in the discretion of the insurer, the assessment feature appears. [Hadel v. Mut. Reserve, 98 Fed. 200; Knott v. Security, etc., Life Ins. Co., 161 Mo. App. 579, 592, 144 S. W. 178; Moran v. Franklin Life Ins. Co., 160 Mo. App. 407, 140 S. W. 955.]

It appearing that the insurance contracts involved here are on the assessment plan, the statute expressly requires they specify the exact amount of money which they promise to pay, and this statute becomes parcel of the contracts on issuing the certificates in this State as was done here. In this view, it is immaterial that the certificates recite, and the by-law too, for that matter, that the sum to be paid under each is the amount of one assessment upon persons holding similar contracts not exceeding $1000, for the statute fixes the amount and requires it to be specified in each contract. [See McFarland v. United States, etc. Accident Ass'n, 124 Mo. 204, 220, 221, 27 S. W. 436.] The same thought is expressed in Hanford v. Massachusetts Ben. Ass'n, supra. It, therefore appears that if plaintiff prevails, he is entitled to recover $1000 and interest on each certificate, rather than $380, the amount of one assessment, as asserted by defendant, on the three.

Section 7913, Revised Statute 1899 (same section 6962, R. S. 1909) exempting fraternal societies from the operation of the statutes on assessment insurance, invoked by defendant in argument is without influence here, for that the contract of insurance involved is not such as a fraternal benefit society is authorized to enter into, but rather one on the assessment plan.

The judgment should be reversed and the cause remanded. It is is so ordered. *Reynolds, P. J.* and *Allen, J.,* concur.