**Helen Gudinas, Appellee, v. Globe Mutual Life Insurance Company of Chicago, Appellant.**

**Gen. No. 32,225.**

Opinion filed March 29, 1928.

A. W. FULTON and S. J. FULTON, for appellant.

JOHN B. BORDEN and PINES, MORSE & STEIN, for appellee; CLARENCE T. MORSE, of counsel.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

This is a suit in the circuit court brought by the plaintiff Helen Gudinas, the beneficiary in a life insurance policy issued by the defendant, Globe Mutual Life Insurance Company of Chicago, on the life of John Gudinas. There was a trial before the court with a jury, and a verdict and judgment for the plaintiff in the sum of $1,000 and certain interest. This appeal is by the defendant, the Insurance Company, from that judgment.

The declaration sets out the policy in full. On its face it is for $1,000. The defendant filed a plea of the general issue and five special pleas. In the first it was alleged that the signature to the application was not that of John Gudinas, the insured; that the application was not made by him, or with his knowledge; that the signature was forged, and that some person was substituted for him when the application was made and when the medical examination took place; that after the death of said John Gudinas, the defendant tendered to the plaintiff the sum of $74.70 as the full amount of premium paid on the policy, which tender was refused; that the liability of the defendant under the policy, if anything, was only $344.02.

In the second it was alleged that it was provided in the policy that if the death of John Gudinas resulted from the use of alcohol or other stimulants, the company should be released from all liability; and that the death of the said John Gudinas did result from the use of alcohol or other stimulants to excess, and that therefore the defendant was not liable.

In the third it is alleged that it was provided in the policy that it would not take effect if the insured at the time was not in sound health; that the policy was is-

sued on March 31, 1924; that at that time John Gudinas was not in sound health, and therefore the policy would not take effect.

In the fourth it is alleged that it was provided in the policy that it would not take effect if before its date the insured had been attended by a physician for any serious disease or complaint unless stated in the application; that before the date of the policy the said John Gudinas had been attended by a physician for a serious disease, which was not stated in the application, and that by reason thereof said policy never took effect.

In the fifth it is alleged that the policy was issued upon a written application bearing what purports to be the signature, "Jen Gudinas"; that if the application is the genuine application of John Gudinas, also known as "Jen Gudinas," that he was asked the question, "Do you now use or have you ever used wine, spirits or malt liquors or tobacco?" and that said question was answered, "No"; that the answer was not true; that John Gudinas at and previous to making the application had been addicted to the excessive use of alcoholic liquors, and in the application the answer was warranted to be true, and by reason thereof the policy was void and of no effect.

Further, in special plea No. 2, as amended, it was alleged that the signature to the application, on March 25, 1924, was not the genuine signature of John Gudinas, or authorized by him, but was forged by some one who was substituting and impersonating John Gudinas without his knowledge; and that the person impersonating John Gudinas was examined for the policy in question instead of John Gudinas, and, therefore, as a result, the policy issued on that application was void and of no effect.

Replications were filed by the plaintiff to the special pleas. They allege, in substance, that the signature to the application was the genuine signature of John Gudinas; that he was the plaintiff's husband and was

the one examined for life insurance; that his death did not result from the use of alcohol or other stimulants to excess; that on the date the policy was issued he was in good health within the meaning of the policy; that the statements in the application were fairly and honestly made by John Gudinas according to his best knowledge and belief and were true in substance and in fact, and were not relied upon by the defendant.

At the trial the plaintiff offered in evidence the policy sued upon, and it was stipulated by counsel for both parties that the premiums were paid according to contract prior to the death of the insured; that within the required time after the death of Gudinas the defendant was notified, and that death occurred on November 8, 1925, and proof thereof was made on November 25, 1925. The plaintiff then rested. The defendant then introduced evidence in an effort chiefly to show that some one impersonated Gudinas and was examined and signed the application. Considerable evidence was offered on that subject. When, however, a comparison is made of the photostatic copies in the record of certain admittedly genuine signatures of the insured on certain documents offered in evidence, with the signature on the application for insurance, it is found that they are so obviously alike, and in all probability written by the same person, that it would be quite unreasonable for this court to override the verdict of the jury on that subject.

Evidence was introduced by the defendant tending to show that the deceased, Gudinas, made certain false answers in the application; that he made false answers as to whether he was in sound health, whether he had ever had a serious illness, and when he was last attended by a physician. We have examined all the evidence as it appears here in the record, and, in our judgment, it does not sufficiently show that the answers were made by the insured with the intention to de-

fraud, and, further, it is in no way sufficient to justify us in disturbing the verdict of the jury.

As we view it, the chief question in the case is, what was the insurance contract, and what amount did it provide that the beneficiary was entitled to upon the death of the insured?

On the outside of the policy, when it was folded, after giving the number of the policy and the name of the defendant, there was the following:

"POLICY OF INSURANCE

|                          |                                |
| ------------------------ | ------------------------------ |
|                          | Date    Mar 31 1924            |
| On The Life Of           | Premium, $37.21                |
| John Gudinas             | Payable every 12 months        |
| Address    1445 50th Ave.| Age 47                         |
| City Cicero    State Ill.| Register 5                     |
| Amount, $1,000.          | Name of Agent    Binz."        |

On the first page of the policy appears, as the first words, the following:

"STIPULATED PREMIUM LIFE INSURANCE POLICY

"Pays for Death or Total and Permanent Disability. No. 37856. A Amount $1000 Age 47 12 Months Premium $37.21 (Payable under this Policy)."

The policy then proceeds:

"THE GLOBE MUTUAL LIFE INSURANCE CO., OF CHICAGO, hereby insures the life of John Gudinas * * * and agrees to pay * * * the sum of One Thousand Dollars to Helen Gudinas, wife of the insured, within sixty days after the receipt and approval of due proof of the death of the insured, except if changed by endorsement on the fourth page hereof, provided that this policy be in full force by payment of premiums and this policy be surrendered at the time of said payment. * * *

"THIS CONTRACT is made in consideration of the application therefor, a copy of which is attached hereto and made a part hereof, and in further consideration of the payment of Twelve months premium

of Thirty-Seven and 21/100 on date of this policy and of the payment of a like sum on or before every Twelve months thereafter during the continuance of this policy to the end of While Life on Whole Life Plan or until the prior death or the total and permanent disability of the insured. * * *

"THIS POLICY is issued and accepted subject to all the endorsements, conditions, benefits and privileges written, stamped or printed by the Company on this and on the following pages, which are part of this contract as fully as if they were recited at length over the signatures hereto affixed."

At the bottom of the first page, there is the signature of the president of the defendant company, and that of the secretary. On the second and third pages, there are certain paragraphs pertaining to various subjects, such as total and permanent disability, and cash return on lapsed policies. One paragraph on page three is entitled, "Schedule of Life Expectancy and Single Premium Rates." Underneath that, in very fine print, in five horizontal columns, there is a table containing certain words and figures, which, it is claimed by the defendant, measures the amount of single premium or lump sum as the secretary to the president of the defendant testified, "that will purchase a given amount of insurance so when it is paid in one lump sum they will not have to pay any further premium the rest of their life."

On the fourth, or back page, that is, on the outside of the policy, there was printed or stamped on by a rubber stamp, which was put on by the secretary to the president of the defendant before the policy was mailed to the insured, the following:

"In consideration of the statements in the application, if the insured should die before the single premium as per table in the within policy is paid, the unpaid portion and five years premiums will be deducted."

Below the stamped matter there is the president's signature, "T. F. Barry." The Medical Examiner's Report, signed by the insured, shows that he was 47 years of age, and, by occupation, a policeman. The Medical Examiner's Certificate, signed by the company's doctor, recites that the heart of the insured was affected with myocarditis, but that it had not affected his constitution; that his personal appearance as to health was good; that in his opinion the applicant was a fair average risk. On the face of the Medical Examiner's Report there is stamped, "March 28, 1924, 3rd Class, F. T. Andrews, Med. Dir."

It is contended for the defendant that even if the plaintiff is entitled to recover, the amount of recovery is not $1,000, but, as the insured died, "before the single premium as per table in the within policy" was paid, it was $1,000 less the "unpaid portion and five years premiums," i. e., $1,000 less $656.26, or a total of $343.74. In support of that claim, the defendant at the trial offered to prove that a computation as to amount due on the policy, if anything, would show only $343.74 as due; that the so-called single premium due bill, according to the table for the age of 47 years, which was that of the insured, is $544.63; that the unpaid portion of that was found by deducting therefrom two annual premiums that were paid, amounting to $74.42; that then, adding to the unpaid portion five annual premiums of $37.21 each, that is, $186.05, the total sum to be deducted from the $1,000 would be $656.26, leaving a balance due of $343.74.

Upon objection being made by counsel for the plaintiff that the provision in question was misleading, ambiguous and unintelligible, and was contrary to the statute covering life insurance, under the stipulated premium or on the assessment plan, the trial judge rejected the evidence.

We think the ruling of the trial judge in excluding the proferred evidence and instructing the jury that if

they found the issues for the plaintiff they should assess the plaintiff's damages at $1,000, was justified and without error.

In our opinion, the stamped provision, on the last page, for a reduction of the amount of insurance recoverable to an amount less than $1,000, the amount conspicuously and expressly specified in the policy, is not, when it is sought to apply it to the schedule of life expectancy, reasonably intelligible; that is, even with the date of death, the age of the insured, and the amount paid for premiums, the stamped provision, taken with the schedule, is not, without more, capable of being reasonably easily understood by the average person, so as to realize sufficiently exactly what is meant, and is not "clear and free from ambiguity and expressed in ordinary words, having precise, definite and well understood meaning" (*Grand Pacific Hotel Co. v. Michigan Commercial Ins. Co.*, 243 Ill. 110, 112), and, further, is, when taken in conjunction with the formula "Schedule of Life Expectancy and Single Premium Rates," in conflict with paragraph 419, chapter 73, Cahill's Rev. St. 1923, which provides:

"Every policy * * * issued * * * and promising payment to be made upon a contingency of death * * * shall specify the sum of money which it promises to pay under such contingency, and the number of days after satisfactory proof of the happening thereof on which such payment shall be made. Upon the occurrence of such contingency, * * * the corporation shall be obligated to the beneficiary for such payment at the time and to the amount specified in the policy or certificate."

On the first page and the last page, the policy appears specifically to be one for $1,000. That figure is mentioned twice on the first page and once on the last page, and nowhere else in the policy does the defendant purport to "*specify the sum of money which it promises to pay.*" It may be urged that the words in

the stamped proviso on the last page, "if the insured should die before the single premium as per table in the within policy is paid, the unpaid portion and five years premiums will be deducted," taken together with the horizontal table of figures on page 3 under the title, "Schedule of Life Expectancy and Single Premium Rates" do, when the age· of the insured, the amount paid for premiums, and the date of death are known, "specify the sum of money which it promises to pay." We do not think, however, that such a situation constitutes a compliance with the requirements of the statute that the policy "shall specify the sum of money which it promises to pay."

In *Page v. Ordway*, 40 N. H. 253, 256, the court, interpreting a statute which required that the debt named in a mortgage would be specified, said that what was meant was that the debt should be specifically named so that one consulting the record might be able "to ascertain the date, nature, and amount of the demands designed to be secured." According to the lexicographers, the word "specify" means to mention specifically or explicitly, to point out, to particularize, to state in full, name expressly and distinctly, to designate by words one thing from another. *Dillow & Co. v. City of Monticello*, 145 Iowa 424, 431; *Stewart v. Jaques*, 77 Ga. 365.

No case has been cited, and we know of none in this State, in which the language of section 15, Cahill's St. ch. 73, ¶ 419, "that the policy shall specify the sum of money which it promises to pay," has been interpreted, but a number of decisions from Missouri have been called to our attention which pass upon words similar to those in our statute.

The words of the Missouri statute were construed in *McPike v. Supreme Ruling of Fraternal Mystic Circle*, 187 Mo. App. 679. In that case, no other specific amount of insurance than $2,000 was mentioned, but there was a reference in the policy to the consti-

tution and by-laws of the society for further provisions in qualification of the insurance contract. Apparently, from the constitution and by-laws it was clearly shown that the beneficiary upon the death of the insured was only entitled to $731.70, but the court held that as the statute required the policy "to reveal the amount of the sum insured in the policy," the provision making the sum specified to be paid subject to the deduction pursuant to the by-laws and constitution, which were referred to and made a part of the policy, contravened the statute and was, therefore, void. The court said: "It appears the only amount mentioned and vouchsafed in the policy here is that of $2,000.00 and the judgment should therefore be affirmed." There are other Missouri decisions on the same general subject, as follows: *Kribs v. United Order of Forresters*, 191 Mo. App. 524; *Parker v. Sovereign Camp of Woodmen of the World* (Mo. App.), 196 S. W. 424; *Courtney v. Fidelity Mut. Aid Ass'n*, 120 Mo. App. 110, 115; *Wilson v. Brotherhood of American Yeoman* (Mo. App.), 237 S. W. 212; *Bondurant v. Brotherhood of American Yeoman* (Mo. App.), 199 S. W. 424; *State ex rel. Business Men's Assur. Co. v. Allen*, 302 Mo. 525, 259 S. W. 77; *McFarland v. United States Mut. Acc. Ass'n*, 124 Mo. 204, 27 S. W. 436; *Goodson v. National Masonic Acc. Ass'n*, 91 Mo. App. 339.

As to the stamped provision and the schedule of expectancy, after careful reading of the stamped provision on the back of the policy, and a determination of the age of the insured, and close examination of the rather condensed and elliptical schedule as to age and amounts, and making certain rather complicated and extended computations, a fairly acute mind would arrive at the conclusion contended for by the defendant. But in view of the emphasis the policy puts upon the fact that it is a policy for $1,000, and the obscurity of the stamped proviso, the difficulty of applying it to

242

the schedule of expectancy, and considering the psychology and mentality of the average man, we are unable to conclude that it would be reasonable to hold that the insured should be bound by such a provision and schedule.

In our judgment, the proviso in the instant case, undertaking, as it does, in conjunction with the schedule, to reduce the specific sum expressly mentioned in the policy, is void, both by reason of the statute and by reason of the difficulty of so understanding it as to be reasonably sure of properly applying it. *Equitable Life Assur. Soc. of United States v. Pettus*, 140 U. S. 226. In that case the court said: ''The Statute is not directory only, or subject to be set aside by the company with the consent of the assured; but it is mandatory, and controls the nature and terms of the contract into which the company may induce the assured to enter.''

For the reasons stated, the judgment will be affirmed.
*Affirmed.*

HOLDOM and WILSON, JJ., concur.